FIDELITY & CASUALTY CO. OF NEW YORK v. F. W. SEAGRIST, JR., CO.

(Supreme Court, Appellate Division, First Department. February 6, 1903.)

1. INDEMNITY INSURANCE—PREMIUMS—DISCOVERY.

Indemnity policies provided that the premiums should be originally based on an estimate of the compensation paid by assured to its employés during the policy, and that if the compensation actually paid exceeded the estimate assured should pay an additional premium, and if the amount paid was less a pro rata share of the premium should be refunded. The premium on other policies, insuring defendant against liability for the acts of drivers, was based on the number of drivers employed under the same conditions, and both policies provided that plaintiff should have the right to examine insured's books, so far as they related to the wages paid and to the number of drivers employed. *Held*, in an action by insurer to recover additional premiums, in which the complaint alleged that the number of drivers employed and the amount of wages paid exceeded the number and amount represented by assured, that plaintiff was entitled to an order for the examination of the latter's books, under Code, Civ. Proc. § 803, giving the court power to compel the inspection of the books of the adverse party relating to the merits of the action.

2. SAME—LACHES.

Where plaintiff alleged that defendant made statements as to the amount paid its employés, which plaintiff believed to be true, and that on the discovery of the falsity of the statements it at once made an application for the examination of defendant's books, and defendant did not deny that the statement was made to plaintiff, and that such statement was not true, the fact that plaintiff had delayed application for such inspection until five years had expired, did not constitute such laches as would deprive it from such relief.

3. SAME—EXTENT OF RIGHT—MODIFICATION OF ORDER.

Where plaintiff was entitled to discovery and inspection of defendant's books in so far as they showed the amount paid employés and the number of drivers employed by defendant, an order directing defendant to produce and deposit with the clerk of court "its ledgers, cashbooks, timebooks, timesheets, and all other books showing the amount of wages paid to employés, during the period covered by the controversy,"

was too broad, and should be limited to requiring defendant to produce books of original entry in which was entered payments to its employés, etc.

Appeal from special term, New York county.

Action by the Fidelity & Casualty Company of New York against the F. W. Seagrist, Jr., Company. From an order granting discovery, defendant appeals. Modified.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Charles C. Sanders, for appellant.
Charles C. Nadal, for respondent.

INGRAHAM, J. The application was for a discovery of certain books of account of the defendant corporation showing the amount of wages paid by the defendant to its employés during a period covered by certain policies of insurance, to enable the plaintiff to prepare its complaint. The action was brought to recover the amount of premium to which the plaintiff is entitled upon certain policies of insurance issued to the defendant. The plaintiff, a corporation engaged in what is called the business of liability insurance in the city of New York, issued to the defendant certain policies insuring it against loss from liability for damages on account of injuries suffered by its employés and others during the term of the policies. The policies seem to have been issued for the year commencing April 1, 1899, and ending April 1, 1900, and for the year commencing April 1, 1900, and ending April 1, 1901. Under these policies, the premium originally fixed was based on the estimate of the compensation paid by the defendant to its employés during the period of the policies. It was provided in the policies that, "if the compensation actually paid exceeds the sum stated in the schedule hereinafter given, the assured shall pay the additional premium earned; if less than the sum stated, the company will return to the assured the unearned premium pro rata." Three of the policies appear to insure the defendant against liability for drivers employed by the defendant in its business. Upon these policies the premiums were based upon the number of drivers employed by the defendant during the period that the policies were in force, and the policies contained a provision that if the number actually employed was more than the number stated in the schedule the assured was to pay an additional premium in proportion; if the number was less, the company, on demand, was to return to the assured a proportionate premium, less 25 per cent. thereof for expenses. These policies also contained a provision that the plaintiff should have the right, at all reasonable times, to examine the books of the assured so far as they related to wages paid to the employés and to the number of drivers employed; and the petition upon which the application is made states that, after the expiration of each of the said policies, the defendant made a written statement to the plaintiff purporting to show the actual amount of wages paid by the defendant to its employés during the term of such policy; that the plaintiff, relying upon such written statements and believing the

same to be true, did not at that time attempt to obtain the examination of the defendant's books provided for in the contract of insurance; that these statements made by the defendant to the plaintiff were false and untrue, and that the defendant has as to each policy failed to accurately and truthfully report the amount of wages actually expended by it during the periods covered by the said policies, but in each instance has falsely and wrongfully misrepresented the amount of wages paid to its employés; that immediately upon the discovery of this fact the plaintiff demanded an inspection of the defendant's books, and that the defendant at first consented, but subsequently refused to allow such an inspection.

The defendant does not deny that the policies were issued to it, nor that the statements furnished were untrue, but denies that any fraudulent misrepresentations were made with respect to the statements made by the defendant in regard to the amount paid by it for labor in any of the years covered by the policies of insurance referred to in said petition, and denies that the plaintiff was deceived or misled by any statements made by the defendant.

In view of the nature of the contract whereby the amount of premium was to be determined by the amount actually paid by the defendant to its employés, it is evident that the only method the plaintiff had of ascertaining the amount of premium to be paid was by evidence that could only be furnished by the defendant. The plaintiff was therefore in a position in which it had to accept the statement of the defendant as to such amount, or have the right to examine the defendant's books of account to ascertain the correctness of the statements made. To meet this condition, the defendant expressly agreed that the plaintiff should have the right to examine the defendant's books of account to verify the statement made as to the amount paid to its employés. The court below was satisfied that the defendant had refused to allow this examination, which by its contract it had agreed to allow, and it was as an enforcement of this agreement that the court was justified upon these allegations in requiring the defendant to submit its books containing the entries of the payments to its employés for inspection by the plaintiff. The general rule requiring a defendant to submit his private books and papers for an inspection by an adverse party is not applied in such a case, where, from the nature of the contract between the parties, the only method by which the amount due to the plaintiff could be ascertained was by an examination of the defendant's books, and where the parties, in view of this situation, had expressly agreed that the plaintiff should be entitled to such an examination.

Section 803 of the Code of Civil Procedure gives the court power to compel a party to an action to produce and discover or give to the other party an inspection and copy, or permission to take a copy, of a book, document, or other paper in his possession or under his control relating to the merits of the action or of the defense therein; and we think, in view of the special contract between the parties and the nature of the obligation of the defendant sought to be enforced in this proceeding, the court below was justified in allowing such an inspection as was necessary to determine the amount that

the defendant actually paid to its employés during the period that these policies were in force. The delay in demanding an inspection of the books is explained by the fact that the defendant made statements as to the amount paid to its employés which the plaintiff believed to be true, and that upon a discovery of the falsity of the statements it at once made an application for an examination of the books. As there is no denial of the fact that the defendant did make a statement to the plaintiff, and that such statement was not true, the court was justified in discarding any laches that there may have been in making the application.

We think, however, that the order is somewhat too broad. By it the defendant is required to produce and deposit with the clerk of the court "its ledgers, cashbooks, timebooks, timesheets, and all other books showing the amount of wages paid by it to its employés during the period covered by the policies of insurance mentioned in the annexed petition, to wit, from April 1, 1899, to April 1, 1902." We do not think that the plaintiff was entitled to an inspection of any books not necessary to determine this question. It would appear that the books of original entry in which was entered the payment to its employés were the only books that the plaintiff was entitled to inspect.

The order should therefore be modified by requiring the defendant to produce and deposit with the clerk of the court the cashbooks, timebooks, and timesheets in use by it during the period covered by the policies of insurance, to wit, from April 1, 1899, to April 1, 1902, and as modified affirmed, without costs. All concur.